IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **HARVEY L. MORTON, Chapter 11** | § | |
| **Trustee for Vallecito Gas, LLC**, | § | |
| | § | |
| Appellant, | § | |
| | § | |
| v. | § | Civil Action No. **3:11-CV-3537-L** |
| | § | Bankruptcy Case No. 07-35674-11 |
| **JOHN YONKERS**, *et al.,* | § | |
| | § | |
| Appellees. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the court is the appeal of Harvey L. Morton as Chapter 11 Trustee for Vallecito Gas,

LLC, filed December 22, 2011.  After consideration of all briefing by the parties, the record on

appeal, and the applicable law, the court **affirms** the bankruptcy court's decision on all matters

appealed as herein set forth.[1]

**I.      Factual and Procedural Background**

This appeal arises from a final judgment entered by the bankruptcy court in Adversary

Proceeding No. 10-3039-BJH, brought by the trustee LLC ("Appellant" or the "Trustee") for debtor

Vallecito Gas in the Chapter 11 bankruptcy *In re Vallecito Gas, LLC*, Case No. 07-35674-BJH-11.

The complicated factual and procedural history giving rise to this appeal and the underlying

adversary proceeding is set forth in detail in the bankruptcy court's July 19, 2011 memorandum

opinion (the "July 2011 Opinion") and other orders referenced in that opinion.  Most of the facts are

---

[1] For the reasons herein explained, the Trustee's second issue as to whether he can raise lack of Navajo Nation consent in challenging assignments of overriding royalty interests in the Hogback Lease is mooted by the court's determination that the bankruptcy court did not abuse its discretion in excluding the only evidence of lack of consent. The court therefore need not address it to affirm the bankruptcy court's decision as to the matters appealed and expresses no opinion on the lack-of-consent issue.

undisputed and were the subject of stipulations. As noted in the July 2011 Opinion, before filing for bankruptcy, debtor Vallecito Gas, LLC ("Vallecito") purchased a mineral lease from Tiffany Gas Co., LLC ("Tiffany") known as the "Hogback Lease," which is located on land owned by the Navajo Nation in San Juan County, New Mexico. On the date of Vallecito's bankruptcy filing, the status of Vallecito's title to the Hogback Lease was uncertain because several competing claims to the Hogback Lease had been asserted in litigation in other courts, including a case commenced in federal court in New Mexico against Michael W. Briggs ("Briggs") and Vallecito on September 8, 2006, referred to as the "Burle Litigation."

One year before filing for bankruptcy, Vallecito executed an assignment ("B-C Assignment") of the Hogback Lease to Briggs-Cockerham, LLC ("B-C"), which held 100% of the membership interests in Vallecito.[2] In late 2009, it was discovered that Briggs had sold undisclosed overriding royalty interests ("ORRI" or "ORRI Assignments") in the Hogback Lease, on behalf of B-C, before and after the Vallecito bankruptcy was filed. In addition, Briggs continued to sell and execute ORRI Assignments in the Hogback Lease, on behalf of B-C, for months after B-C was believed to have disclaimed any interest in the Hogback Lease during a hearing held by the bankruptcy court on April 17, 2008.

---

[2] B-C was owned 50% by Briggs and 50% by John Cockerham when Vallecito filed for bankruptcy.

**Memorandum Opinion and Order - Page 2**

On March 9, 2010, the Trustee filed the underlying adversary proceeding against Appellees,[3] who received ORRI Assignments from B-C in the Hogback Lease.  Pursuant to 28 U.S.C. § 2201, the Trustee asserted several causes of action seeking a declaratory judgment that the ORRI Assignments in the Hogback Lease were void or subject to avoidance by the Trustee.  The bankruptcy court tried the adversary case on May 9, 2011.  The July 2011 Opinion contains the bankruptcy court's pertinent findings of fact and conclusions of law regarding the underlying adversary proceeding, which can be summarized as follows:

> [T]he Trustee is not entitled to a declaration that the ORRI Assignments are void or voidable for lack of Navajo Nation consent.
>
> ORRI Assignment Nos. 2-10 were transferred pre-petition. Therefore, 11 U.S.C. § 362 does not apply to those transfers. Moreover, the Trustee may not rely upon 11 U.S.C. § 362 to avoid ORRI Assignment Nos. 11-66 because it is not an avoidance provision of the Bankruptcy Code.  These conclusions dispose of the Trustee's first, second, and third causes of action to the extent that the Trustee seeks to invalidate the ORRI Assignments on the ground that they violated the automatic stay. Therefore, the Trustee is not entitled to a declaration that those ORRI Assignments are avoidable on this ground.
>
> With respect to the Trustee's claims under 11 U.S.C. § 549, that section does not apply to ORRI Assignment Nos. 1-10, which all occurred pre-petition. However, the Trustee has established a prima facie case for avoidance as to the ORRI

---

[3] Appellees in this action include: John Yonkers; Judy Yonkers; S. Frank Culberson; Tom Kievit; Kyle Kievit; Kerry Burleson; David Esposito; Kathleen Esposito; Stephen Murdoch; J.L. Bradshaw Trust; Lynette Esch; Esch Family Trust; Roland Murphy; Lewis P. Lane; Lynn C. Lane; Graham Haddock; R. Dave Adams; Connie Adams; Ray Koren; Judith Armogida; The Robert E. and Rosalie T. Dettle Living Trust; Daniel Mancha; The Dickinson Family Revocable Living Trust; John Wolz; Milton DiGregorio; Beverly DiGregorio; Lewis C. Wright, Jr.; Terri Wright; Michael Noonan; Patricia H. Brammer; William M. Brammer Living Trust; R.M. Elliott; Eileen Elliott; James T. Martin, Sr.; Richard V. Halter; Robert L. Romine; Beth Ann Cutsinger; Dennis Price; Kenneth Neuenschwander; Anna B. Neuenschwander; Donald G. Harney and Connie J. Harney, as Trustees of the Donald G. Harney and Connie J. Harney Joint Living Trust dated September 23, 1997; Ronald Foster; Charles Wall; Marion Wall; Harry E. Diezel; The Virginia Judd Diezel Revocable Living Trust; The Williams Family Living Trust; Matthew Diezel; The Lee Family Revocable Trust; and Colt Production Company, LLC (collectively, the "Kievit Appellees"). Appellees other than the Kievit Appellees include: John Joel Pugh; Stanley M. Plato; Charles Pringle; Ann Pringle; and Dennis J. Rambo. Only the Kievit Appellees responded to the brief filed by the Trustee.  For simplicity purposes, the Kievit Appellees are referred to herein as "Appellees."  The court's reference herein to "ORRI Purchasers" refers to all of the appellees in this case, including but not limited to the Kievit Appellees, and related ORRI Assignments implicated by the Trustee's appeal, which focuses in large part on ORRI Assignment Nos. 26 through 56, and 58 and 66.

**Memorandum Opinion and Order - Page 3**

Assignments identified in the Joint Pretrial Order as ORRI Assignment Nos. 11-66, in that each transfer was a transfer of property of the estate that was not authorized by the Bankruptcy Code or by the Court. With respect to the Defendants' defenses, the Court concludes that the Trustee is not entitled to a declaration that the ORRI Assignments that are identified on Ex. A to the Joint Pretrial Order as ORRI Assignment Nos. 11-27 are avoidable under § 549 because the statute of limitations of § 549(d) had expired prior to the filing of this adversary proceeding. . . . Therefore, the Trustee's second cause of action against the March 20 Claimants is time-barred to the extent the Trustee seeks a declaration that ORRI Assignment Nos. 11-27 are avoidable under § 549.

   As to ORRI Assignment Nos. 28-66 . . . These Defendants (other than Pugh) have . . . established [with regard to their affirmative defense] that they are "good faith purchasers without knowledge of the commencement of the case" under § 549(c). Pugh has not established that he is a "good faith purchaser without knowledge of the commencement of the case." Accordingly, the Trustee is entitled to a declaration that the ORRI Assignments identified in the Joint Pretrial Order as ORRI Assignment Nos. 28-66 are avoidable, but each of the holders of those assignments, except for Pugh, is entitled to a lien to the extent of the value they gave to B-C, which value has been stipulated to in the Joint Pretrial Order. Therefore, the Trustee is not entitled to a declaration that these Defendants have no right, title or interest in the Hogback Lease, except as to Pugh. However, the Trustee is entitled to recover, pursuant to § 550, these Defendants' interests in the Hogback Lease, subject to their lien rights described above. The Trustee may recover Pugh's entire interest because he is not a good faith purchaser without knowledge of the commencement of the case and he did not prove that he gave present fair equivalent value for the transfer.

R. 93-96 (footnotes and citations omitted).[4]  Judgment consistent with the July 2011 Opinion was entered on September 23, 2011. On October 7, 2013, the Trustee filed the instant appeal.

## II.   Legal Standard–Bankruptcy Appeals

   In a bankruptcy appeal, district courts review bankruptcy court rulings and decisions under the same standards employed by federal courts of appeal: a bankruptcy court's findings of fact are

---

[4] The bankruptcy court's reference to "Defendants" refers collectively to all of the defendants in the underlying adversary proceeding who received an ORRI Assignment in the Hogback Lease and are identified by name, grant date, recording date, percentage acquired, and price paid on Exhibit A to the Joint Pretrial Order.  In the Joint Pretrial Order, the parties distinguished between the various Defendants by designating and identifying them as the "Kievit Defendants," the "Wolz Defendants" and Joel Pugh ("Pugh"), and the bankruptcy court referred to the respective Defendants in the same manner in its July 2011 Opinion.  R. 18 n.4.

**Memorandum Opinion and Order - Page 4**

reviewed for clear error, and its conclusions of law de novo. *Robertson v. Dennis (In re Dennis)*, 330 F.3d 696, 701 (5th Cir. 2003); *Century Indem. Co. v. National Gypsum Co. Settlement Trust (In re National Gypsum Co.)*, 208 F.3d 498, 504 (5th Cir.), *cert. denied*, 531 U.S. 871 (2000).  A bankruptcy court's "findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous." Fed. R. Bankr. P. 8013.  A finding is clearly erroneous and reversible only if, based on the entire evidence, the reviewing court is left "with the definite and firm conviction that a mistake has been made." *In re Dennis*, 330 F.3d at 701 (citation omitted).  In conducting this review, the court must give due regard to the opportunity of the bankruptcy judge to determine the credibility of the witnesses. *Id.*; *Young v. National Union Fire Ins. Co. (In re Young)*, 995 F.2d 547, 548 (5th Cir.1993) (quoting Fed. R. Bankr. P. 8013).  A bankruptcy judge's evidentiary rulings are reviewed for an abuse of discretion. *See In re Rapine*, 536 F.3d 512, 518 (5th Cir. 2008), *cert. denied*, 555 U.S. 1138 (2009). The bankruptcy court has "great latitude" when conducting a bench trial. *See Matter of Corland Corp.*, 967 F.2d 1069, 1074 (5th Cir. 1992) (citing *Cranberg v. Consumers Union of U.S., Inc.*, 756 F.2d 382, 392 (5th Cir. 1985)).

## III.    Analysis

The Trustee raises four issues on appeal: (1) whether the bankruptcy court erred in excluding from evidence the October 12, 2010 letter from the Navajo Nation Department of Justice (the "Letter") and whether the letter is admissible under Federal Rules of Evidence 803(8), 803(15), or 807; (2) whether the bankruptcy court erred in holding that the Trustee cannot raise lack of consent by the Navajo Nation to invalidate the assignments of ORRIs in the Hogback Lease; (3) whether the bankruptcy court erred in concluding that the lis pendens  ("Burle Lis Pendens") filed by the plaintiffs in the Burle Litigation ("Burle Plaintiffs") did not provide the ORRI purchasers ("ORRI

Purchasers") with constructive notice of the Vallecito bankruptcy proceeding; and (4) whether the ORRI Purchasers are bound by the settlement between the Trustee and the Burle Plaintiffs in the Burle Litigation embodied in the Vallecito bankruptcy confirmation plan (the "Plan").

### A.      Evidentiary Ruling Excluding the October 12, 2010 Letter

The Trustee contends that the bankruptcy court erred in ruling that the Letter was inadmissible at trial. The Trustee acknowledges that the Letter is hearsay under Federal Rule of Evidence 801, but he nevertheless contends that it is admissible under three exceptions to the hearsay rule: "(i) public records, Rule 803(8); (ii) statements in a document affecting an interest in property, Rule 803(15); and (iii) the residual exception, Rule 807." Appellant's Br. 12.

Appellees counter that the Letter at issue was excluded by the bankruptcy court on authentication and hearsay grounds.  Because the Trustee only appealed the bankruptcy court's hearsay ruling, Appellees contend that the Trustee waived any argument to the exclusion of the evidence based on authenticity, and that the bankruptcy court's ruling as to the Letter can be affirmed on this basis alone without addressing the Trustee's hearsay arguments.  In addition, Appellees contend that the Trustee cannot raise the issue for the first time in his reply brief and any attempt by him to do so should be rejected.  For support that the Trustee waived this issue, Appellees cite *In re GGM, P.C.*, 165 F.3d 1026, 1032 (5th Cir. 1999); *Cavallini v. State Farm Mutual Auto Insurance Company*, 44 F.3d 256, 260 n.9 (5th Cir. 1995); and *Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir.), *cert. denied*, 513 U.S. 868 (1994).  Appellees further assert that even if the court considers the Trustee's hearsay exception arguments, the bankruptcy court did not err in excluding the Letter.

As to the Trustee's hearsay arguments, Appellees contend that the Letter lacks trustworthiness because of the circumstances under which it was drafted.  In particular, Appellees

take issue with the Trustee because the Letter was originally drafted by the Trustee's counsel and provided the to the Navajo Nation for its signature for purposes of the pending lawsuit between the Trustee and Appellees. Appellees also contend that the Trustee's counsel's communications with the Navajo Nation in connection with the Letter paint an incomplete and inaccurate picture of the Vallecito bankruptcy proceedings and circumstances surrounding the assignments at issue. Appellees further assert that the Trustee's counsel's attempt to "poison the well" may have improperly motivated the Navajo Nation attorney with whom he spoke and resulted in an unreliable advisory opinion based on incomplete information. Appellee's Br. 9-10, 17-19.[5] Appellees also contend that the Letter is inadmissible under Rules 803(8), 803(15), and 807 for other reasons. For the reasons herein explained, the court affirms the bankruptcy court's ruling in excluding from evidence the Letter.

Federal Rule of Evidence 902 sets forth the types of evidence that are self-authenticating and require no extrinsic evidence of authenticity to be admitted. Unless the evidence is self-authenticating, it must be authenticated pursuant to Rule 901 by producing evidence sufficient to

---

[5] Regarding the communications between the Trustee's counsel and William A. Johnson, an attorney for the Navajo Nation, Appellees assert that six days after the bankruptcy court inquired about the status of the ORRI assignments should the Navajo Nation not approve them when submitted for approval, the Trustee's counsel sent an e-mail to Mr. Johnson for the purpose of determining whether the Navajo Nation would approve the ORRI assignments:

> The email attached a Title Status Report purporting to show title into Vallecito, along with a copy of the Plan and Confirmation Order. The Trustee's counsel told Mr. Johnson that Briggs had sold ORRIs through B-C and attached a bankruptcy order finding Briggs and B-C in contempt. Although the letter gives the impression that the ORRI Purchasers were in cahoots with Briggs and B-C, the Trustee's counsel did not tell Mr. Johnson that ORRI Purchasers such as the Kievit Appellees had no notice of the bankruptcy and were not bound by the Plan and Confirmation Order. The email also states that B-C never had any title, but fails to disclose that Vallecito had assigned the Hogback Lease to B-C. The Trustee's counsel also did not tell Mr. Johnson that, under the terms of the ORRI Assignments, the ORRI Purchasers had the right to seek approval from the Navajo Nation.

Appellee's Br. 10.

support a finding that the item is what the proponent contends it to be.  Fed. R. Evid. 901.  "E-mails (like letters and other documents) must be properly authenticated or shown to be self-authenticating."  *Recursion Software Inc. v. Interactive Intelligence*, 425 F. Supp. 2d 756, 772 n. 8 (N.D. Tex. 2006).

The Trustee contends in his reply brief that his March 18, 2011 motion in limine to determine the admissibility of the Letter did not address authenticity and the bankruptcy court did not rule on the Letter's authenticity.  The Trustee also maintains that "it is clear from Mr. DeWolf's [counsel's] argument on behalf of the Trustee at the hearing that he intended to authenticate the Letter at trial if the Court ruled that it was not hearsay."  Appellant's Reply 9.  The record, however, reflects that Appellees, in response to the Trustee's motion, specifically objected to the Letter's admission on authenticity grounds (R. 2510), and the bankruptcy court addressed the issue at length during the hearing on the Trustee's motion.  R. 3747-49.  Ultimately, the bankruptcy court rejected the Trustee's argument that the Letter was self-authenticating.  R. 3770.  The bankruptcy court also disagreed with the Trustee's proposals as to how the Letter could be authenticated and proved up at trial.  Frustrated, the Trustee's counsel acknowledged: "Well, if    I don't know, Your Honor.  Frankly, I didn't think that they [Appellees] were really going to contest     that they're really contesting authenticity that this letter is from the Navajo Nation.  So if the letter can't be authenticated at trial, then I guess that's an issue."  R. 3749.

Because the bankruptcy court excluded the Letter on authenticity grounds, as well as inadmissible hearsay, and the Trustee has appealed only the bankruptcy court's inadmissible hearsay ruling, he has waived any challenge to the bankruptcy court's alternate basis for excluding the Letter.  *Lockamy v. Carrillo*, 432 F. App'x 283, 287 (5th Cir. 2011) (per curiam) (unpublished) (citing *Yohey*

*v. Collins*, 985 F.2d 222, 224-25 (5th Cir. 1993)).  Accordingly, the court agrees with Appellee's contention that the bankruptcy court's ruling excluding the Letter can be affirmed on this basis alone.

Moreover, the court concludes that the bankruptcy court properly excluded the Letter as inadmissible hearsay because it lacks trustworthiness necessary for admission pursuant to Federal Rules of Evidence 803(8), 803(15), and 807.[6]  As noted in Appellee's response to the Trustee's motion to determine admissibility, the Letter was originally drafted by the Trustee's counsel and came into existence as a result of the Trustee's counsel's solicitation in communicating with William A. Johnson, an attorney for the Natural Resources Unit of the Navajo Nation Department of Justice, by telephone and e-mails. When questioned by the bankruptcy court, the Trustee's counsel acknowledged that the Letter is substantially identical to the sample letter he provided to Mr. Johnson for consideration. *Id.* 3744-45; *compare* R. 2520-21 (draft prepared by the Trustee) and R. 971-72 (final draft signed by Mr. Johnson). Additionally, it is unclear what all was said during the telephone conversations between the Trustee's counsel and Mr. Johnson that caused Mr. Johnson to sign the letter drafted by the Trustee's counsel with only minor revisions. Their e-mail communications, however, indicate that counsel for the Trustee presented the information and his views in a one-sided manner and did so for the sole purpose of obtaining a favorable opinion in support of the Trustee's position in the bankruptcy litigation.  Thus, the Letter was drafted in significant part by the Trustee's counsel, not the Navajo Nation, with only a few minor variations and done in an apparent effort by the Trustee to create evidence for the pending litigation that supported the Trustee's position. This alone makes it untrustworthy.

---

[6] Although Rule 803(15) itself does not specifically mention trustworthiness, the advisory committee's note to paragraph 15 indicates that trustworthiness is a requirement to a document's admissibility under paragraph 15 of Rule 803: "*The circumstances under which dispositive documents are executed . . . are believed to be adequate guarantees of trustworthiness.*" Fed. R. Evid. 803(15) advisory committee's note (emphasis added).

Further, the Trustee recognized that the Navajo Nation Mineral Department was the entity with authority to approve the overriding royalties[7]; however, as noted by the bankruptcy court, it is not clear from the Letter whether Mr. Johnson, as an attorney for the Natural Resources Unit of the Navajo Nation Department of Justice, had authority to make the statements in the Letter and speak on behalf of the Navajo Nation Mineral Department regarding the validity of the overriding royalties. R. 3745 ("Well, who is this person? Because I thought it was the Minerals Department that would have to make this decision.").  The bankruptcy court also expressed the concern that the Letter and statement in the Letter regarding the validity of the overriding royalties were solicited by the Trustee's counsel and merely advisory in nature because Appellees had not requested the Navajo Nation to approve the overriding royalties yet.  R. 3745-46 ("They haven't heard from the Ori's.  The Ori's haven't asked them to approve anything yet.  And unilaterally with a little push from you [the Trustee's counsel], they come down with a pretty harsh decision before anybody has asked them to do anything.  That seems, one, very advisory; and, two, odd.").

Since the Letter was essentially created by the Trustee and came into existence as a result of the Trustee's ex parte and one-sided communications with Mr. Johnson, and it is unclear whether Mr. Johnson had authority to make the statements in the Letter, the court concludes that the Letter is not trustworthy because of the circumstances under which it was created.  The court also disagrees with the Trustee's assertion, with regard to Rule 807, that he could not have reasonably obtained equally probative evidence by other means.  Even if the Navajo Nation was out of subpoena range for purposes of testifying at trial, Appellees contend, and the court agrees, that the Trustee could have sought to depose a representative of the Navajo Nation.  The court therefore concludes that the

---

[7] *See* R. 3745 (hearing transcript); R. 2521 (signature page of Letter draft prepared by the Trustee).

**Memorandum Opinion and Order - Page 10**

bankruptcy court did not abuse its discretion in excluding the Letter on authenticity and inadmissible hearsay grounds, and **affirms** the bankruptcy court's May 11, 2011 Order on the Trustee's Motion to Determine Admissibility of Navajo Nation Letter Dated October 12, 2010 (R. 2634-35).

### B.    Lack of Consent by the Navajo Nation to Invalidate the ORRI Assignments

The Trustee contends, with regard to this issue, that the only question for the court to decide is whether he may assert lack of Navajo Nation consent as a basis to invalidate or avoid the ORRI Assignments.  Although this issue was heavily briefed by the parties, the court concludes that it need not address it in order to affirm.  Having determined that the bankruptcy court's exclusion of the Letter was proper, the issue as to whether the Trustee may assert lack of Navajo Nation consent as a basis to invalidate or avoid the ORRIs is **moot** because the Trustee acknowledges that, other than the Letter, "[t]here is no available evidence that indicates how the Navajo Nation would respond to a request for approval from the ORRI holders." Appellant's Br. 16.  As the issue is moot, the court need not address it.

### C.    ORRI Purchaser's Constructive Notice of the Vallecito Bankruptcy

Regarding the ORRI Purchasers'  "good faith purchaser" defense under 11 U.S.C. § 549(c), the Trustee appeals the bankruptcy court's determination that the Burle Lis Pendens did not give the ORRI Purchasers constructive knowledge of the Vallecito bankruptcy.  The Trustee contends that the ORRI Purchasers who recorded their assignments after the Burle Lis Pendens are considered subsequent purchasers and cannot be bona fide purchasers under the New Mexico lis pendens statute. The Trustee further asserts that the notice of a lis pendens under New Mexico law is deemed a republication of all pleadings in the litigation and a subsequent purchaser is bound by the outcome

of the litigation as if it were a party to the litigation.   Based on *Hamman v. Southwestern Gas Pipeline, Incorporated*, 821 F.2d 299 (5th Cir. 1987), the Trustee maintains:

> A prospective purchaser of property is informed by a lis pendens notice that the title to the property is in dispute and any interest it acquires is subject to the outcome of that pending litigation. A lis pendens purchaser is charged with the duty to investigate the dispute, discover its scope, facts, and applicable defenses and counter-defenses, and, if necessary, to ensure that any defenses favorable to it are interposed by the party from which it will gain title.

Appellant's Br. 32 (quoting *Hammond*, 821 F.2d at 304) (citation omitted).   The Trustee therefore contends that the ORRI Purchasers had a duty to investigate the dispute in the Burle Litigation. According to the Trustee: "Even a cursory investigation, especially considering the ORRIs are bound as if they were parties to the Burle Litigation, would have revealed the defendant's bankruptcy filing." Appellant's Br. 32.   Because the Burle plaintiffs ("Burle Plaintiffs") subsequently entered a settlement agreement with the Trustee in the Vallecito bankruptcy, the Trustee contends that the ORRI Purchasers had constructive knowledge of Vallecito bankruptcy case as a result of the Burle Lis Pendens.

Appellees counter that the Trustee did not raise the issue of constructive notice in the adversary proceeding and therefore waived it.   Even if not waived, Appellees maintain that this issue does not affect ORRI Assignment Nos. 1 through 27 because the constructive notice, lis pendens issue arose solely in the context of the ORRI Purchasers' "good faith purchaser" defense under section 549(c), and the bankruptcy court ruled against the Trustee on other grounds as to ORRI Assignment Nos. 1 through 27 that were not appealed.   Appellees contend that the Burle Lis Pendens did not provide the ORRI Purchasers with constructive notice of the Vallecito bankruptcy case because it does not reference the Vallecito bankruptcy filing, which was not filed until one year after

the Burle Lis Pendens was filed and after the judgment in the Burle Litigation was entered and the

case was closed.  Appellees contend that, contrary to the Trustee's argument:

> [A]n investigation of the Burle Litigation file would have revealed a complete absence of any reference to the Vallecito bankruptcy. Indeed, the only document in the Burle Litigation file that post-dates the Vallecito bankruptcy filing and, thus, the only document that could have referenced the filing, is the order striking the Burle Plaintiffs' Motion for Reconsideration. That order makes no reference to a bankruptcy filing. A thorough investigation of the Burle Litigation file would have only revealed (1) that the matter was settled in a manner that did not adversely affect title to the Hogback Lease, and (2) based on the settlement, a judgment was entered in favor of Vallecito and Michael Briggs that disposed of the lawsuit.

Appellee's Br. 36 (citations to record omitted).  Appellees therefore assert that "the Burle Lis

Pendens did not, and could not, put ORRI #s 28-66 on constructive notice of the filing of the

Vallecito bankruptcy."  *Id.*

### 1.   Waiver

The court begins by addressing Appellee's contention that the Trustee waived the right to

appeal the bankruptcy court's determination that ORRI Purchasers of Assignment Nos. 28-66 lacked

constructive notice of the Vallecito bankruptcy case.  As acknowledged by both parties, the issue of

whether the Burle Lis Pendens provided the ORRI Purchasers with constructive notice of the

Vallecito bankruptcy case arose in the context of the ORRI Purchasers' section 549(c) affirmative

defense.  The ORRI Purchasers therefore had the burden of proof on this issue, not the Trustee.  In

determining whether the ORRI Purchasers qualified as good faith purchasers, the bankruptcy court

necessarily addressed at length in its July 2011 Opinion the issue of whether the ORRI Purchasers

had constructive knowledge of the Vallecito bankruptcy case as a result of the Burle Lis Pendens.

Accordingly, the court concludes that the Trustee was entitled to appeal the bankruptcy court's

determination in this regard and did not waive the issue.

**Memorandum Opinion and Order - Page 13**

2.  **Appellee's Contention that the Constructive Notice Issue is Limited to ORRI Assignment Nos. 28-66**

It is apparent from the July 2011 Opinion that the bankruptcy court's determination that the Burle Lis Pendens did not provide the ORRI Purchasers, except Pugh, with constructive knowledge of the Vallecito bankruptcy case was limited to ORRI Assignment Nos. 28-66. The Trustee appears to acknowledge as much. Accordingly, the court's analysis is likewise limited to whether the ORRI Purchasers of Assignment Nos. 28-66, except Pugh, lacked constructive notice of the Vallecito bankruptcy case despite the Burle Lis Pendens.

3.  **Whether the Bankruptcy Court Erred in Concluding that the Burle Lis Pendens Did Not Provide the ORRI Purchasers with Constructive Knowledge of the Vallecito Bankruptcy**

Section 549(c) of the bankruptcy code applicable to "good faith purchasers" provides :

> (c) The trustee may not avoid under subsection (a) of this section a transfer of an interest in real property to a good faith purchaser without knowledge of the commencement of the case and for present fair equivalent value unless a copy or notice of the petition was filed, where a transfer of an interest in such real property may be recorded to perfect such transfer, before such transfer is so perfected that a bona fide purchaser of such real property, against whom applicable law permits such transfer to be perfected, could not acquire an interest that is superior to such interest of such good faith purchaser. A good faith purchaser without knowledge of the commencement of the case and for less than present fair equivalent value has a lien on the property transferred to the extent of any present value given, unless a copy or notice of the petition was so filed before such transfer was so perfected.

11 U.S.C. § 549(c). The parties stipulated that the ORRI Purchasers, other than Joel Pugh, did not have actual notice of the Vallecito bankruptcy case or the Burle Litigation. Additionally, it is undisputed that the Trustee did not record a copy of the Vallecito bankruptcy petition in the San Juan County, New Mexico real property records where the ORRI Assignments were recorded. According to the parties' pretrial stipulations, the bankruptcy court's Confirmation Order is the only document ever recorded by the Trustee in the San Juan County, New Mexico real property records, and it was

not recorded until January 25, 2010.  The bankruptcy court therefore addressed whether the ORRI Purchasers had constructive knowledge of the Vallecito bankruptcy case as a result of the Burle Lis Pendens filed in the San Juan County, New Mexico real property records by the Burle Plaintiffs in in conjunction with the Burle Litigation.

Although both parties assumed that the phrase "good faith purchaser without knowledge of the commencement of the case" was defined by New Mexico state law, the bankruptcy court determined, based on the language of and the policy behind section 549(c) and the Fifth Circuit's holding in *In re Waterford Energy*, 294 F. App'x 900 (5th Cir. 2008) (unpublished), that a federal definition should be applied without reference to state law regarding the "bona fide purchaser" doctrine.  Following the lead of bankruptcy courts in other jurisdictions, the bankruptcy court considered the Burle Lis Pendens to determine whether it provided the ORRI Purchasers with constructive notice of the Vallecito bankruptcy case, that is, whether it provided the ORRI Purchasers with inquiry notice of Vallecito's bankruptcy status or sufficient facts to induce a reasonable person to investigate whether Vallecito was in bankruptcy.

The bankruptcy court concluded that the Burle Lis Pendens did not provide the ORRI Purchasers with constructive notice of Vallecito's status as a bankruptcy debtor or the Vallecito bankruptcy case.  Without addressing the parties' contentions as to whether the Burle Lis Pendens was valid and effective at all material times, the bankruptcy court reasoned:

> [E]ven if the Burle Lis Pendens was, at all material times, valid and effective under New Mexico law, it afforded the Defendants no constructive knowledge *of the commencement of the* [Vallecito bankruptcy] *case* under § 549(c). Section 549's concern with a transferee's level of "knowledge" is, pursuant to the plain and unambiguous language of § 549, directed solely to knowledge "of the commencement of the case." Section 549(c) is designed to protect good faith purchasers who are unwittingly dealing with a debtor or with property of the estate, so long as they pay present fair equivalent value. The Court concludes that the Burle

**Memorandum Opinion and Order - Page 15**

> Lis Pendens did not, even if effective, provide *any* constructive knowledge to the Defendants that they were dealing with a bankruptcy debtor or with property of a bankruptcy estate. The Burle Lis Pendens was filed over a year before Vallecito filed its bankruptcy case. The judgment in the Burle Litigation was also entered nearly a year before the Vallecito bankruptcy filing. There is nothing in the pleadings in the Burle Litigation that gives any hint of a bankruptcy filing or even that Vallecito was contemplating such a filing. The only pleading in the Burle Litigation that post-dates Vallecito's bankruptcy filing is the order striking the Burle Plaintiff's Motion for Reconsideration, and it makes no reference to a bankruptcy filing. Ex. 98, 99.

R. 72-73 (July 2011 Op.) (emphasis in original and footnote omitted).  The bankruptcy court also

noted:

> [E]ven if the Defendants had actual or constructive knowledge of the commencement of the Vallecito bankruptcy case, they would not necessarily have notice that they were (1) dealing with a bankruptcy debtor, or (2) dealing with property of the estate since their grantor was B-C, not Vallecito. Although it is true that the Defendants knew, at the time they got their ORRI Assignments, that Vallecito was in the chain of title, there is nothing to suggest that they had notice, at the time they took their assignments, that Vallecito retained a contingent, reversionary interest in the Hogback Lease. Although they knew that the assignment from Tiffany to Vallecito required BIA approval, and thus could perhaps have assumed that an assignment from Vallecito to B-C would also need such approval, they had no reason to suspect that Vallecito would not assist B-C in seeking that approval. The B-C Assignment required Vallecito to do so, and the Defendants had notice that Vallecito and B-C were affiliates. The documents they were provided at the time of their assignments show that the two entities share the same address, and that Briggs signed the documents on behalf of both entities.

*Id*. n.49.

The court agrees with the bankruptcy court.  Whether the ORRI Purchasers are good faith

purchasers under section 549(c) requires the court to determine whether the Burle Lis Pendens or

Burle Litigation provided the ORRI Purchasers with inquiry notice of Vallecito's bankruptcy status

or sufficient facts to induce a reasonable person to investigate whether it was in bankruptcy.  The

Trustee, however, wants this court to assume, without an evidentiary basis, and make an

impermissible inference that the ORRI Purchasers had constructive knowledge of the Vallecito

bankruptcy case simply because the Burle Lis Pendens and Litigation involved a dispute over title to the Hogback Lease that was ultimately resolved at a later date in a separate bankruptcy proceeding involving Vallecito.

The Trustee's contention in this regard is fundamentally flawed for a number of reasons. As noted by the bankruptcy court, Section 549(c) deals with the issue of whether a purchaser had knowledge of the commencement of a bankruptcy case, not a title dispute involving the purchaser's grantor.  Here, the title dispute in the Burle Litigation did not involve the ORRI Purchasers' grantor B-C, and even if it did, notice of the title dispute and papers filed in the Burle Litigation would not have necessarily caused a reasonable person to inquire as to whether Vallecito subsequently filed for bankruptcy. In arguing the contrary, the Trustee attempts to overlay the requirement imposed by state law, that a lis pendens purchaser is charged with the duty to investigate a title dispute, onto a purchaser's status as a good faith purchaser under section 549(c) of the bankruptcy code.  The two, however, are not synonymous, and the court agrees with the bankruptcy court's conclusion that the phrase "good faith purchaser without knowledge of the commencement of the case" should be defined without reference to state law involving the "bona fide purchaser" doctrine.

Moreover, all of the cases relied on by the Trustee involved lis pendens state law and the effect of lis pendens on subsequent purchasers, but none arose in the context of a good faith purchaser under section 549(c).  Additionally, the cases cited do not support the Trustee's contention that a lis pendens purchaser's duty to investigate extends for an indefinite period beyond the litigation in which the lis pendens was filed.  The cases relied on by the Trustee, instead, merely stand for the proposition that: (1) a subsequent purchaser's duty to investigate extends to the matters in the *pending* litigation in which the lis pendens was filed; and (2) a subsequent purchaser is bound

by the outcome of the *pending* litigation in which the lis pendens was filed.  In *High Mesa General Partnership v. Patterson*, the New Mexico Court of Appeals noted that "the filing of a notice of lis pendens is *merely* 'a republication of the pleadings filed in the *pending* judicial proceedings.'" *High Mesa Gen. P'ship v. Patterson*, 2010-NMCA-072, 148 N.M. 863, 866, 242 P.3d 430, 433 (N.M. Ct. App. 2010) (quoting *Title Guar. & Ins. Co.* v. *Campbell*, 106 N.M. 272, 277, 742 P.2d 8, 13 (N.M. Ct. App. 1987)) (emphasis added).  The court in *High Mesa* also quoted the New Mexico Supreme Court for the following proposition:  "The notice of lis pendens is *purely incidental to the action wherein it is filed, and refers specifically to such action and has no existence apart from that action*." *High Mesa Gen. P'ship*, 148 N.M. at 866, 242 P.3d at 433 (quoting *Superior Const., Inc. v. Linnerooth*, 103 N.M. 716, 719, 712 P.2d 1378, 1381 (1986)) (emphasis added).[8]

The Fifth Circuit case relied on by the Trustee similarly concluded:

> A prospective purchaser of the property is informed by the lis pendens notice that the title to the property is in dispute and any interest it acquires is subject to the outcome of that *pending* litigation. . . . The purchaser bears the burden of protecting its interest *during the [pending] litigation*. The lis pendens purchaser is bound by agreements entered into by its grantor during the *course of the [pending] litigation* and is charged with protecting its interests which could be affected by such agreements.
>
> . . .
>
> We answer Southwestern Gas' first point by noting that a lis pendens purchaser's interest is conditioned upon the outcome of the *pending* litigation whether that outcome is arrived at by litigation or by agreement. *See* 1 Tex. Jur. 3d Actions § 305, at 749 (1979). *See also Montserrat Overseas Holdings, S.A. v. Larsen*, 709 F.2d 22, 24 (9th Cir. 1983) ("[I]t is uniformly recognized that one who acquires an interest in land subject to an existing interest which is the basis of a lawsuit takes

---

[8] *High Mesa* indicates that this quote is from the dissent in *Superior Construction, Incorporated v. Linnerooth*; however, the quoted phrase is actually found in the main body of the opinion, not the dissent. *See Linnerooth*, 103 N.M. at 719, 712 P.2d at 1381.

subject to the judgment *in that suit* even if that judgment is pursuant to a settlement between the parties.").

*Hamman v. Southwestern Gas Pipeline, Inc.*, 821 F.2d 299, 304-05 (5th Cir.), *vacated in part on other grounds by* 832 F.2d 55 (5th Cir. 1987) (emphasis added).  The court in *Hamman* expressly declined to express any opinion on a situation such as the one at hand in this case "where a purchaser is not informed by the lis pendens notice and active pleadings *of a result arising out of a later settlement*."  *Id.* at 306 n.3 (emphasis added).  In dicta, the *Hamman* court nevertheless provided the following example and potential outcome in a situation involving a subsequent settlement:

> As an example, if Eva's suit had only sought an accounting and did not challenge Gladys' title, as it explicitly did, Texas law might not hold Southwestern Gas to a settlement divesting Gladys of her title. As noted above *the distinction between this case and our example is that Southwestern Gas was informed that Gladys' title was under attack and subject to divestment.*

*Id.* (emphasis added).

Applying the same reasoning to this case, the court concludes the papers filed in the Burle Litigation would not have informed the ORRI Purchasers that their title was under attack and subject to divestment by the Burle Plaintiffs.  As noted by Appellees, a judgment was entered in favor of Vallecito and Briggs that disposed of the Burle Litigation. The Trustee nevertheless contends that the subsequent motion for reconsideration in Burle Litigation filed by the plaintiffs revealed that the dispute between the Burle Plaintiffs, Vallecito, and Briggs regarding the Hogback Lease had not been resolved.  The Trustee therefore maintains that the ORRI Purchasers were on notice that further litigation outside of the Burle Litigation might be required to resolve the dispute, and that the ORRI Purchasers thus had a duty to continue to investigate the outcome of the dispute.  A review of the motion for consideration, however, reveals only that the Burle Plaintiffs sought to enforce the

parties' November 2, 2006 Settlement Agreement and the plaintiff's option, pursuant to that agreement, that required Vallecito and Briggs to pay the plaintiffs $1.3 million for title in the interests at issue.  The motion also indicates that Vallecito and Briggs had thus far not complied with the agreement; however, any breach of that agreement would merely entitle the Burle Plaintiffs to a judgment for money damages, and such a judgment, if obtained, would not have affected the ORRI Purchasers' title in the Hogback Lease or subjected it to divestment.  Thus, based on the reasoning in *Hamman*, the subsequent settlement between the Trustee and the Burle Plaintiffs in the bankruptcy proceeding would not have necessarily affected or divested the ORRI plaintiffs of their title. [9]

Thus, assuming without deciding that the Burle Lis Pendens was at all material times valid and effective under New Mexico law,[10] the court disagrees with the Trustee's contention that a review of the documents filed in the Burle Litigation would have led the ORRI Purchasers to inquire further regarding the status of the title dispute in that case.  More importantly, the court concludes that such a review, if undertaken, would not have led the ORRI Purchasers to inquire regarding a potential bankruptcy filing by Vallecito.  *Id.* (A "lis pendens notice does not inform a prospective purchaser of matters not evident from the pleadings and papers in the pending litigation or matters not reasonably discoverable."). The court therefore **affirms** the bankruptcy court's determination that

---

[9] The court notes, and the Trustee acknowledges, that *Hamman* was based on Texas lis pendens law, whereas the Trustee took the position in the underlying proceeding that New Mexico law applied.  The Trustee, however, appears to only rely on *Hamman* and a North Dakota Supreme Court case, *Bragg v. Burlington Resources Oil and Gas Company, LP*, 2009 ND 33, 763 N.W.2d 481 (N.D. 2009), to illustrate why he believes that the ORRI Purchasers are subsequent purchasers under the New Mexico statute, which according to the Trustee is similar to the North Dakota statute. The Trustee does not state whether the Texas lis pendens statute is similar to the New Mexico statute and did not rely below on Texas lis pendens law or the Fifth Circuit's opinion in *Hamman*.

[10] As previously noted, the bankruptcy court did not address the parties' contentions as to whether the Burle Lis Pendens was valid and effective as against the ORRI Purchasers because it concluded that even if effective and valid, it did not provide the ORRI Purchasers with constructive knowledge of the Vallecito bankruptcy case. The court declines, for the same reason, to address whether the Burle Lis Pendens was valid and effective as against the ORRI Purchasers.

the Burle Lis Pendens did not provide the ORRI Purchasers with constructive notice of the Vallecito bankruptcy case.

### D.    The Trustee's Settlement with the Burle Plaintiffs in the Vallecito Bankruptcy

Based on similar reasoning, the Trustee contends that under New Mexico law, the ORRI Purchasers are bound by the outcome of the Burle Litigation, which was ultimately resolved through a settlement in the Vallecito bankruptcy that was incorporated into the Plan.  The Trustee challenges the bankruptcy court's determination that a notice of lis pendens under New Mexico law does not bind parties to the outcome of different or separate litigation.  The Trustee maintains that the Vallecito bankruptcy is not "different litigation."  Appellant's Br. 35, n.14.  According to the Trustee, the Vallecito bankruptcy is merely an extension of the Burle Litigation:

> The dispute between the parties to the Burle Litigation necessarily changed venue from the District Court in New Mexico to the Bankruptcy Court in Dallas because of the bankruptcy filing [sic] the automatic stay of section 362 prevented the litigation from continuing in New Mexico.  Furthermore, one of the purposes of the bankruptcy code is the satisfaction of all claims against the bankrupt's estate to proceed in a central forum.

*Id.*  Along this line, the Trustee also contends:

> When the Burle litigation was initiated, Michael Briggs was a defendant and so was Vallecito. But when the Trustee was appointed, he stepped into Briggs' shoes in his role as Vallecito's principal. Thereafter, the parties were Briggs, the Burle Plaintiffs, and the Trustee. The Trustee later reached a settlement with Briggs, BC, and the Burle Plaintiffs whereby Briggs and BC would disclaim any interest in the Hogback Lease, which the Trustee would later sell free and clear of any interests but the Navajos' royalty. This settlement, which just happens to be incorporated into the Plan, is what binds the ORRIs as subsequent purchasers under the New Mexico Lis Pendens Statutes.

*Id.* 33-34, ¶ 68.  Based on *Hamman* and North Dakota Supreme Court case, *Bragg v. Burlington Resources Oil and Gas Company, LP*, 2009 ND 33, 763 N.W.2d 481 (N.D. 2009), the Trustee contends: "The law is clear that a party who acquires an interest in land subject to an existing interest

which is the basis of a lawsuit takes subject to the outcome [of] that suit, including settlement between the parties." *Id.* 35-36.  For support that he stepped into the shoes of Briggs and Vallecito and that his settlement with the Burle Plaintiffs is binding on the ORRI Purchasers, the Trustee relies on *Hamman*: "The grantee or [lis pendens] purchaser stands in the shoes of his vendor, and acquires only whatever title remains in his vendor at the termination of the suit. If the litigation is won by the grantor the conveyance is effective. If not, the grantee may acquire nothing." *Id.* (quoting *Hamman*, 821 F.2d at 304).

Appellees, on the other hand, contend that the Burle Litigation and the Vallecito bankruptcy proceeding are not one and the same because a settlement and judgment were entered in the Burle Litigation and the case was closed before the Vallecito bankruptcy was commenced.  Appellees contend that the Trustee's position, that the Burle Litigation remained ongoing despite the entry of a judgment and simply transferred venue and merged with the bankruptcy because Vallecito and Briggs breached the Settlement Agreement entered in the Burle Litigation, is plainly wrong and mixes apples with oranges.  Appellees assert that, contrary to the Trustee's contention, the Burle Litigation that was litigated in federal district court in New Mexico is separate and distinct from the Vallecito bankruptcy that was filed in Dallas, Texas.  Appellees maintain that the Burle Litigation was dismissed pursuant to a judgment in favor of Vallecito and Briggs based on a binding Settlement Agreement entered by the parties in that case in 2006, whereas the settlement in the Plan pertains to a breach of contract claim arising out of the alleged breach of the Settlement Agreement entered in the Burle Litigation, not the Burle Litigation itself or the claims asserted in that case.

Regarding the Trustee's argument that he stepped into the shoes of Vallecito in the Burle Litigation, Appellees counter that the Trustee could not have become a party to the Burle Litigation

because he was not appointed until January 14, 2008, after the judgment in the Burle Litigation was entered disposing of the case and after all other entries on the Burle Litigation docket sheet. For similar reasons, Appellees assert that the Burle Litigation could not have changed venue to Dallas, Texas, and merged with the bankruptcy proceeding because the Burle Litigation was concluded upon the entry of a final judgment that was not appealed.   Appellees also contend that a notice of lis pendens is case specific.   Based on *Linnerooth,* Appellees contends that under New Mexico law, "[a] notice of lis pendens is purely incidental to the action wherein it is filed, and refers specifically to such action and *has no existence apart from that action*."   Appellee's Br. 43 (quoting *Linnerooth*, 103 N.M. 716, 719, 712 P.2d 1378, 1381 (1986)) (emphasis added by Appellees).   Appellees therefore contend that even assuming that the ORRI Purchasers were subsequent purchasers under the New Mexico lis pendens statute, the filing of the Burle Lis Pendens would only bind them to the outcome of that litigation, not the subsequent outcome and settlement in the Vallecito bankruptcy. According to Appellees: "Judge Houser hit the nail on the head when she stated, '[c]learly, the unambiguous language of the statute only purports to bind subsequent purchasers to proceedings in the action in which the lis pendens is filed     *not to every action that may involve claims to the same real property*."   Appellee's Br. 43-44 (quoting R. 88, July 2011 Opinion) (emphasis by Appellees).

In its July 2011 Opinion, the bankruptcy court concluded that *Bragg* was distinguishable because it stood for the "unremarkable proposition" that a subsequent purchaser is bound by the outcome of the *pending* litigation in which a lis pendens is filed:

> *Bragg* does *not* stand for the proposition that a non-party may be bound to the results of *other* litigation, even if that other litigation is what ultimately settles, for once and for all, disputes in prior litigation in which a lis pendens has been filed. *Bragg* stands for the unremarkable proposition that non-parties may be bound by the results in litigation in which a lis pendens is filed; even if the ultimate settlement post-dates a partial summary judgment in that same action, it is still a part of "all the proceedings"

in the action in which the lis pendens is filed. However, nothing in *Bragg* suggests that the phrase "all the proceedings" of "said action" as used in New Mexico's lis pendens statute includes proceedings in other actions as well.

R. 75-76 (July 2011 Opinion). The court agrees and concludes, for the reasons already discussed, that *Hamman* and *High Mesa* are similarly distinguishable and do not support the Trustee's position that his subsequent settlement in the Vallecito bankruptcy with the Burle Plaintiffs is binding on the ORRI Purchasers. The court also rejects the Trustee's argument that the Burle Litigation and Vallecito bankruptcy are one and the same. Such argument requires a quantum leap of logic that is not supported by the evidence in this case or the law. The court therefore **affirms** the bankruptcy court's determination that the Trustee's settlement with the Burle Plaintiffs that is incorporated in the Plan is not binding on the ORRI Purchasers.

## IV.     Conclusion

For the reasons herein stated, the court **affirms** the bankruptcy court's July 19, 2011 memorandum opinion and May 11, 2011 Order on Trustee's Motion to Determine Admissibility of Navajo Nation Letter Dated October 12, 2010, and **dismisses** the appeal by Appellant. Pursuant to Bankruptcy Rule 8016, the clerk of the court is **directed** to prepare, sign, and enter judgment upon receipt of and in accordance with this memorandum opinion and order. All reasonable and allowable costs are to be taxed against Appellant.

**It is so ordered** this 7th day of August, 2013.

Sam A. Lindsay
United States District Judge

**Memorandum Opinion and Order - Page 24**